**Elnora H. DURAN, Appellant–Plaintiff**

**v.**

**Daniel R. DURAN, Lynn A. Dunn, Nancy J. Johnson and the Illiana Federal Credit Union, Appellees–Defendants.**

**Daniel R. DURAN, Lynn A. Dunn, and Nancy J. Johnson, Counter–Plaintiffs**

**v.**

**Elnora H. DURAN, Counter–Defendant.**

**Daniel R. DURAN, Lynn A. Dunn, and Nancy J. Johnson, Cross–Plaintiffs**

**v.**

**The ILLIANA FEDERAL CREDIT UNION, Cross–Defendant.**

No. 45A05–9103–CV–68.

Court of Appeals of Indiana, Fifth District.

Feb. 13, 1992.

Rehearing Denied April 7, 1992.

Hoeppner, Wagner & Evans by Gordon A. Etzler, Valparaiso, for appellant-plaintiff.

Dogan and Dogan by Thomas M. Dogan, Gary, for appellees-defendants.

BARTEAU, Judge.

Elnora Duran ("Elnora") appeals the trial court's order denying her motion for summary judgment and granting summary judgment in favor of Daniel R. Duran, Lynn A. Dunn and Nancy J. Johnson ("Children"). Elnora raises two issues which we restate as:

1. Whether Elnora is entitled to the funds in her deceased husband's Individual Retirement Account ("IRA") as a joint owner with rights of survivorship where the Children are the named beneficiaries; and

2. Whether Elnora is entitled to that portion of the IRA represented by proceeds from her deceased husband's pension plan retirement benefits.

The Children also raise the issue whether this appeal is moot and should be dismissed.

We reverse.

## FACTS

Elnora and Donald Duran married on August 20, 1982. No children were born to this marriage but Donald had three children (Children) from a previous marriage. Donald had established a savings account in his name in 1950 with the Illiana Federal Credit Union ("Credit Union"). This was designated account number 17192–00, savings account. On September 1, 1982, Elnora and Donald executed a Joint Stock Account Agreement with the Credit Union in order to convert Donald's savings account into a joint account with rights of survivorship. On January 27, 1986 Donald established an IRA with the Credit Union naming Children as the only beneficiaries. The Credit Union designated this account number 17192–03, IRA.

Donald retired from the Illinois Bell Telephone Company on January 1, 1986. Upon his retirement, Donald received his benefits in a lump sum distribution of $69,750.79. $53,360.96 of this was rolled over into account number 17192–03, IRA on April 2, 1986. Elnora did not give her written consent to Donald's lump sum distribution. Other deposits to account number 17192–03, IRA brought the balance, including interest, to $78,653.85 as of December 31, 1989.

Donald died on September 26, 1989. Elnora filed her Complaint for Declaratory Judgment on October 12, 1989, asking the court to declare her the owner of the funds in the IRA. The trial court denied Elnora's motion for summary judgment and granted

Children's motion for summary judgment, awarding Children the funds in the IRA. Elnora did not request a stay of execution pending appeal and the Credit Union distributed the funds to Children pursuant to the trial court's order on proceedings supplemental.

## MOOTNESS

■ Elnora brought this action seeking a declaration that she, and not Children, is the owner of the IRA. However, because the Credit Union distributed the funds, the subject matter of the lawsuit, the IRA, no longer exists. While Elnora argues that the proceedings supplemental was an entirely different action and not relevant to this appeal (indeed, so irrelevant that Elnora did not mention in her statement of the case that the IRA had been distributed—an omission we assume was made with a good faith belief that it was irrelevant) we do not agree. However, we will not go so far as Children urge and say that Elnora acquiesced in or recognized the validity of the judgment by failing to request a stay of execution. Although in the event Elnora prevails recovery may be difficult, that does not preclude us from addressing the issues regarding Elnora's interest in the IRA. This appeal is not moot.

## STANDARD OF REVIEW

On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Schrader v. Mississinewa Community School Corp.* (1988), Ind.App., 521 N.E.2d 949, *trans. denied.* Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Clark v. Millikin Mortgage Co.* (1986), Ind.App., 495 N.E.2d 544. In addition, "[no] judgment rendered on the motion shall be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto shall have been specifically designated to the trial court." Ind.Trial Rule 56.

## JOINT OWNERSHIP

■ Initially, we address the issue whether Elnora is a joint owner with rights of survivorship in account number 17192–03, IRA. Elnora relies on the Joint Stock Account Agreement she and Donald signed in 1982 for account number 17192 and argues that this agreement also covers the IRA because it is also a 17192 account. The record does not support this position.[1] It is clear and uncontroverted from the record that the Credit Union assigned to each account held by the Durans the identifying number 17192, but each account had an identifying suffix as well. For instance, the savings account was number 17192–00, a checking account was number 17192–01, and the IRA was account number 17192–03. Uncontroverted evidence also shows that each account was separately documented when opened.

Furthermore, the IRA Trust Application was signed solely by Donald Duran as grantor of the trust. Neither the Trust Application nor the Trust Agreement makes mention of joint ownership. Clearly, Donald was the sole owner of the IRA and we reject Elnora's argument to the contrary.

## RETIREMENT BENEFITS

■ Elnora contends that at the least she is entitled to the funds distributed to Children that represent Donald's retirement benefits, because she did not consent to Children being named as beneficiaries to the benefits and because she did not consent to a lump sum distribution of the benefits to Donald.

---

1. Elnora also argues that the trial court erroneously denied her motion to strike the affidavit of a Credit Union officer on several grounds. However, in her Appellant's Brief Elnora relies on the very same affidavit. She has waived any objection to the affidavit.

Initially, we note that Donald did not name Children as beneficiaries of his retirement plan. While he did name them beneficiaries of the IRA, the IRA is separate and distinct from his retirement plan. Thus, we only address the issue whether Elnora is entitled to the proceeds from the retirement plan because she did not consent to a lump sum distribution.

The parties agree that Donald's retirement plan with Illinois Bell is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA), as amended by the Retirement Equity Act of 1984 (REACT). However, the parties do not agree on the applicability of 29 U.S.C. § 1055. Section 1055(a) requires pension plans to provide joint and survivor annuities. Paragraphs (c)(1) and (c)(2) require that all pensions *must* be taken as joint and survivor annuities (paragraph (c)(1)) unless the spouse of the employee waives that right in writing (paragraph (c)(2)).

The Children argue that § 1055 does not apply to Donald's benefits by virtue of paragraph (b) which states, in part:

> **(b) Applicable plans.** (1) This section shall apply to—
>
> (A) any defined benefit plan,
>
> *   *   *   *   *   *
>
> (C) any participant under any other individual account plan unless—
>
> *   *   *   *   *   *
>
> (ii) such participant does not elect the payment of benefits in the form of a life annuity, and
>
> *   *   *   *   *   *

29 U.S.C. § 1055(b).[2] The Children cite (b)(1)(C)(ii) to argue that because Donald did not elect to receive his benefits as an annuity, the joint and survivor annuity required by (c)(1) did not apply. Clearly, if Donald's plan was "any defined benefit plan," § 1055 applies and a lump sum distribution without Elnora's consent was improper.[3] If, however, Donald was a participant in an "individual account plan" under (b)(1)(C), then a lump sum distribution without Elnora's consent did not violate ERISA. We are hampered in our review because the parties to this action included in the record neither a copy of Donald's retirement plan, nor any other evidence to show whether it was "any defined benefit plan" or "any other individual account plan."

The only relevant evidence is a copy of an Illinois Bell Bulletin sent on April 12, 1985, to its employees, including Donald, notifying them of changes in ERISA affecting their retirement plans. The bulletin advises employees who participate in any one of three Ameritech Savings Plans or the Ameritech Pension Plan that a written spousal consent is necessary if anyone other than the spouse is listed as the prime beneficiary. This notification tracks the language of paragraph (c)(2)(A) of § 1055, which requires written consent from the spouse to waive the qualified joint and survivor annuity and designate another beneficiary. The bulletin did not advise that the present value of the annuity could be distributed in a lump sum only upon written consent of the participant and the spouse of the participant as required by paragraph (g)(2). Other than the assertion in their brief that Donald was a participant in an

---

**2.** "(34) The term 'individual account plan' or 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.
(35) The term 'defined benefit plan' means a pension plan other than an individual account plan...."
29 U.S.C. § 1002.

**3.** 29 U.S.C. § 1055(g)(2) states:
"If—
   (A) the present value of the qualified joint and survivor annuity or the qualified preretirement survivor annuity exceeds $3,500, and
   (B) the participant and the spouse of the participant (or where the participant dies, the surviving spouse) consent in writing to the distribution,
the plan may immediately distribute the present value of such annuity."

individual contribution plan to which § 1055 does not apply, Children do not refute with evidence the inference from the bulletin that Donald was a participant in a plan to which § 1055 does apply.

Because Elnora is appealing from a grant of summary judgment, she stands in the shoes of the nonmovant and any doubts as to an issue of material fact must be resolved in her favor. *Schrader, supra.* At the very least, an inference can be drawn that Donald's retirement plan was covered by § 1055. The trial court was presented with this dispute as to the applicability of the statute, but entered summary judgment despite an unresolved question of material fact. Accordingly, entry of summary judgment was error. We reverse the trial court's judgment granting Children summary judgment. By the same token, we affirm the trial court's judgment denying Elnora's motion for summary judgment.

On remand, if Children prove that Donald's plan was exempt from § 1055, Elnora has no claim to the proceeds of Donald's retirement fund. If, however, Elnora proves that § 1055 covered Donald's plan, then Elnora is entitled to the proceeds, despite the distribution to Children. It has long been the law in Indiana that where a person has received money, either from the rightful owner or a third person, under circumstances in which equity and good conscience militate for its return, the rightful owner may recover the money. *Jackson v. Creek* (1911), 47 Ind.App. 541, 94 N.E. 416; *see also Criswell v. Whitney* (1895), 13 Ind.App. 67, 41 N.E. 78.

In *Criswell,* plaintiff and her husband had purportedly assigned an insurance policy on the husband's life to defendant. Plaintiff was the named beneficiary on the policy. Subsequent to the husband's death, plaintiff signed a statement that defendant owned the policy and that plaintiff waived all interest in the policy. The insurance company then paid the proceeds to defendant. The trial court found that the original assignment was inoperative to divest plaintiff's interest in the policy and the statement executed after her husband's death was done so without consideration. Consequently, defendant was obligated to pay over the proceeds to plaintiff. As to defendant's argument that plaintiff should look to the insurance company for wrongfully paying out the proceeds, the court stated:

> [G]ranting that [plaintiff] might pursue the company, she is not compelled to. The [defendant] having received the proceeds of the policy, which were really due to [plaintiff], [plaintiff] may compel [defendant] to pay them over to her. By this means the most equitable result is attainable.

41 N.E. at 79.

*Criswell* remains good law and we believe would be appropriate to the facts of this case, in the event it is found that Donald's retirement benefits were wrongfully paid over to him in a lump sum.

The trial court's judgment in favor of Children is reversed and this case is remanded for further proceedings consistent with this opinion.

BAKER and RUCKER, JJ., concur.